UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM ROBERT KEEN,

       Plaintiff,

v.                                  Case No. 3:22-cv-145-MAP

COMMISSIONER OF SOCIAL SECURITY

       Defendant.

_____/

## ORDER

      Plaintiff seeks judicial review of the denial of his claim for child disability insurance benefits (DIB).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by (1) failing to include mental functional limitations Plaintiff believes were supported by the decisions of the state agency psychologists; (2) improperly relying upon overstatements regarding Plaintiff's daily activities and response to medications as a basis for rejecting both the severity of Plaintiff's limitations and the opinions of medical professionals; and (3) failing to properly evaluate the opinion of Peter Knox, Ph.D.  As the ALJ's decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

_____

[1]  The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

I.      Background

Plaintiff, who was born in 2001, claimed disability beginning October 30, 2017 (Tr. 10, 12, 32, 47).  He was 16 years old on the alleged onset date.  Plaintiff obtained less than a high school education, and he had no past relevant work experience (Tr. 20, 203-04).  Plaintiff alleged disability due to autism, developed delay, attention-deficit hyperactivity disorder (ADHD), oppositional defiant disorder (ODD), and aggression (Tr. 203).

Given his alleged disability, Plaintiff filed an application for child's DIB.  The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 47-86, 89-102).  Plaintiff then requested an administrative hearing (Tr. 103).  Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff and Plaintiff's mother appeared and testified (Tr. 29-46).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7-28).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not attained the age 22 as of October 30, 2017, the alleged onset date, nor engaged in substantial gainful activity since that date (Tr. 12).  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: autism, ADHD, ODD, and borderline intellectual functioning (Tr. 12).  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

(Tr. 13).  The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations: limited to performing work which needs little or no judgment to do simple duties that can be learned on the job in a short time (up to and including 30 days); able to deal with the changes in a routine work setting; able to relate adequately to supervisors with occasional contact with coworkers and no contact with the public; and limited to work settings that do not require production-paced work (Tr. 15).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 19).

The ALJ determined that Plaintiff had no past relevant work, was a younger individual, had a limited education, and transferability of job skills was not an issue because Plaintiff did not have past relevant work (Tr. 20).  Given Plaintiff's background and RFC, the vocational expert (VE) testified that Plaintiff could perform jobs existing in significant numbers in the national economy, such as a waxer, floor; a cleaner II; and a laundry laborer (Tr. 21, 43-44).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 21-22).  Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 177-80).

Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. § 405(g).

II.   *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A).   A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4).  If the claimant cannot perform the tasks required of his or

her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted).   While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).   The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to

determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

    III.    *Discussion*

As indicated, Plaintiff argues that the ALJ erred in three ways: (1) by failing to include mental functional limitations supported by the decisions of the state agency psychologists; (2) by improperly relying upon overstatements regarding Plaintiff's daily activities and response to medications as a basis for rejecting the severity of Plaintiff's limitations and the opinions of medical professionals; and (3) by failing to properly evaluate the opinion of Dr. Knox.

    A.    *Medical Opinions*

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.  To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms.  20 C.F.R. § 404.1545(a)(1).  In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

Under the regulations, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 404.1520c(c)(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment

relationship, and whether the medical source examined the claimant, in addition to other factors.   20 C.F.R. § 404.1520c(c)(3)(i)-(v), (4), & (5).   While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[2]   20 C.F.R. § 404.1520c(b)(2).

### 1.   State Agency Psychologists

Here, Val Bee, Psy.D., and Robert Hodes, Ph.D., the state agency psychological consultants, each offered opinions as to Plaintiff's mental limitations and capabilities (Tr. 56-60, 75-81).[3]  Dr. Bee reviewed the evidence of record in October 2019 and found that Plaintiff experienced moderate limitations in his ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself (Tr. 56).   Dr. Bee elaborated that she believed Plaintiff would have difficulty with detailed learning but appeared to maintain the ability to understand and remember simple information and procedures (Tr. 60).   She opined that Plaintiff might also exhibit problems concentrating on complex or simultaneous demand but appeared mentally capable of simple, routine task activities

---

[2] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue.   *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

[3] Under the revised regulations, an ALJ need not adopt any prior administrative medical findings but must consider medical evidence from federal and state agency medical consultants, as such "consultants are highly qualified and experts in Social Security disability evaluation."  20 C.F.R. § 404.1513a(b)(1).   Though state agency medical consultants are considered highly qualified and experts, nothing in the revised regulations requires an ALJ to find opinions from state agency medical consultants persuasive or more persuasive than a treating or an examining medical source.

(Tr. 60).  As to social interaction, Dr. Bee determined that Plaintiff was appropriate and cooperative on exam with no clinical signs of autism, speech/language impairment or ADHD and appeared most comfortable functioning in relative isolation from others, although Plaintiff could persist in a role with only limited and superficial social demands (Tr. 60).  Lastly, Dr. Bee stated that Plaintiff appeared to recognize hazards, generate suitable goals, and generally adjust to customary work-environment demands within the stated limitations but may need gradual introduction to changes and support with travel arrangements (Tr. 60).  Likewise, after review of the record in February 2020, Dr. Hodes also concluded that Plaintiff experienced moderate limitations in his ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself and would experience the same limitations identified by Dr. Bee (Tr. 75-81).

### 2.    Dr. Knox

Subsequently, in November 2020, Plaintiff's counsel referred Plaintiff to Dr. Knox for a mental status evaluation, clinical evaluation, and psychological evaluation, after which Dr. Knox provided his evaluation notes, a Mental RFC Assessment, and a Psychiatric Review Technique form (Tr. 1456-95).  In evaluating Plaintiff, Dr. Knox obtained background information regarding Plaintiff's condition from Plaintiff's mother and Plaintiff as well as a review of several prior treatment notes (Tr. 1459-60).  Upon examination, Dr. Knox identified no abnormal mental status findings, normal behavioral observations, and normal functional abilities but noted that Plaintiff was not capable of managing his own funds (Tr. 1461-63).  Dr. Knox conducted the

Wechsler Adult Intelligence Scale-IV test yielding the following scores for Plaintiff: 85 in verbal comprehension, 86 in perceptual reasoning, 71 in working memory, 71 in processing speed, and a Full Scale IQ of 75 – putting Plaintiff within the borderline range of global intellectual functioning (Tr. 1463-64). Given Plaintiff's scores, Dr. Knox opined that Plaintiff might have trouble in keeping up with his peers in a wide variety of situations that required thinking and reasoning abilities, his ability to reason with words would be comparable to his ability to reason without the use of words, and his verbal and nonverbal reasoning abilities were in the low average range (Tr. 1463).

Dr. Knox additionally measured Plaintiff's verbal reasoning abilities by conducting the Verbal Comprehension Index (VCI), which measures verbal reasoning and concept formation (Tr. 1464). Plaintiff's scores fell within the low average range, above only 16% of his peers (Tr. 1464). His scores also represented a diverse set of verbal abilities, as he performed much better on some verbal tasks than others, achieving his best performance among the verbal reasoning tasks on the information subtest that required him to respond orally to questions about common events, objects, places, and people to measure his general fund of knowledge (Tr. 1464). Dr. Knox then measured Plaintiff's perceptual reasoning abilities by conducting the Perceptual Reasoning Index, which measures fluid reasoning in the perceptual domain with tasks that assess nonverbal concept formation, visual perception and organization, visual-motor coordination, learning, and the ability to separate figure and ground in visual stimuli (Tr. 1464). Plaintiff's scores fell within the low average range, above only 18% of his peers (Tr. 1464). He performed comparably on the perceptual reasoning

subtests, suggesting that his visual-spatial reasoning and perceptual-organizational skills are similarly developed (Tr. 1464).

Dr. Knox then measured Plaintiff's working memory and processing speed (Tr. 1464-65). Plaintiff's ability to sustain attention, concentrate, and exert mental control fell within the borderline range, performing better than only approximately 3% of his peers with a score of 71 (Tr. 1464-65). According to Dr. Knox, Plaintiff's abilities to sustain attention, concentrate, and exert mental control were a weakness relative to Plaintiff's nonverbal and verbal reasoning abilities, with such weakness potentially making the processing of complex information more time-consuming for Plaintiff, draining his mental energies more quickly as compared to others at his level of ability, and might result in more frequent errors on a variety of learning or complex work tasks (Tr. 1465). Similarly, Plaintiff's ability in processing simple or routine visual material without making errors fell within the borderline range, with his score of 71 better than only approximately 3% of his peers (Tr. 1465).

Dr. Knox conducted several other tests as well (Tr. 1466-72). First, Dr. Knox conducted the Autism Spectrum Quotient Test, with Plaintiff's score falling in the range of autism spectrum disorder (ASD) in the Asperger's Syndrome range with a score of 38 (Tr. 1466-68). Next, Dr. Knox administered the Brown Attention Deficit Disorder (ADD) Scale for Adults, with Plaintiff's scored average in all areas showing signs of ADHD-inattentive range (Tr. 1468). Thereafter, Dr. Knox conducted the Millon Clinical Multiaxial Inventory-IV (MCMI-IV), which involved Plaintiff answering questions of how he sees himself with the results referring to Plaintiff's

enduring and pervasive personality traits that underlie Plaintiff's emotional, cognitive, and interpersonal difficulties, focusing more on his habitual and maladaptive methods of relating, behaving, thinking, and feeling (Tr. 1468-72).   Dr. Knox set forth several findings, including that Plaintiff's profile indicated an overcontrolled internal cohesion wherein basic intentions and interaction with others were framed within a constricted and defended mindset; a pronounced distrust typified Plaintiff's behaviors and relationships, creating cognitive-affective immobilization and a distorted sense that others and their circumstances were, for the most part, malevolent in nature; the inner template on which Plaintiff relied for understanding and interpreting reality was likely to be compromised; Plaintiff's sense of psychic coherence was often precarious; Plaintiff often projected his own negative self-reflections onto others and had a tendency to create self-defeating vicious circles and inflexible interpersonal exchanges; and, though Plaintiff was typically able to function adequately, periods of marked emotional, cognitive, or behavioral dysfunction were likely (Tr. 1469).   As to Plaintiff's clinical syndromes, Dr. Knox indicated that Plaintiff appeared to be typically angry, irritable, and conflicted such that his personality style currently seemed complicated by symptoms of a generalized anxiety disorder and subject to brief periods of hypomanic excitement wherein Plaintiff exhibited pressured speech, a decreased need for sleep, restlessness, and a general expansiveness and extreme distractibility, leading him to be easily provoked and prone to temper outbursts and angry and disruptive actions (Tr. 1471).   Further, as Plaintiff presented as unrestrained and rash, he was often restless and indefatigable with his tirelessness potentially turning to turbulence,

meaning he might become socially obdurate, inappropriate, and potentially caustic and assaultive (Tr. 1470).

Given the results of the examination and testing, Dr. Knox diagnosed Plaintiff with ASD-Asperger's syndrome and generalized anxiety disorder with a borderline IQ and indicated that Plaintiff's personality configuration presented a dependent personality disorder (Tr. 1473, 1477).   In discussing Plaintiff's social reactions, Dr. Knox stated:

> Impaired social reactions are a key component of Asperger's syndrome. [Plaintiff] finds it difficult to develop meaningful relationships with his peers.   He struggles to understand the subtleties of communicating through eye contact, body language, or facial expressions and seldom show[s] affection towards others.  At time[s,] he can be accused of being disrespectful and rude, since he can't comprehend expectations of appropriate social behavior and he is often unable to determine the feelings of those around [him.  Plaintiff] is said to lack both social and emotional reciprocity.

(Tr. 1477).

After evaluating Plaintiff, Dr. Knox completed a Mental RFC Assessment (Tr. 1456-57).   In the Mental RFC Assessment, Dr. Knox indicated that Plaintiff experienced severe limitations in the following abilities: to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to ask simple questions or

request assistance; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; and to set realistic goals or make plans independently of others (Tr. 1456-57).[4]  Dr. Knox concluded that Plaintiff experienced marked limitations in his ability to make simple work-related decisions and to travel in unfamiliar places or use public transportation (Tr. 1456-57).   Finally, Dr. Knox determined that Plaintiff experienced moderate limitations in the following abilities: to remember locations and work-like procedures; to understand and remember very short and simple instructions; to understand and remember very detailed instructions; to carry out short and simple instructions; to carry out detailed instructions; and to maintain attention and concentration for extended periods (Tr. 1456-57).

Dr. Knox also submitted a Psychiatric Review Technique Form (Tr. 1479-95).  Dr. Knox stated that he based his findings on Plaintiff's intellectual disorder, anxiety and obsessive-compulsive disorders, autistic disorder and other pervasive developmental disorders, and neurodevelopmental disorders and indicated the criteria Plaintiff met for each disorder (Tr. 1479-88).  Given the severity of Plaintiff's disorders, Dr. Knox opined that Plaintiff experienced (1) extreme limitations in interacting with

---

[4]  The scale included the following options: not significantly limited, moderately limited, markedly limited, severely limited, and not ratable (Tr. 1456).

others and adapting or managing himself and (2) marked limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace (Tr. 1491). Lastly, Dr. Knox concluded that Plaintiff had a serious and persistent mental disorder that has lasted at least two years with marginal adjustment, meaning Plaintiff had minimal capacity to adapt to changes in his environment that were not already part of his daily life, even with mental health therapy and psychosocial support (Tr. 1491).

### 3.    *LMHC Anderson*

Thereafter, in December 2020, LMHC Anderson wrote a letter at the request of Plaintiff's mother addressing Plaintiff's mental health counseling, which LMHC Anderson had been providing to Plaintiff since May 2020 (Tr. 1580-81). According to LMHC Anderson, Plaintiff exhibited very poor eye contact, forgetfulness, not focusing on the subject, low awareness of normal social skills, lower academic functioning than his age, and lack of carrying on a conversation about himself in counseling (Tr. 1580). LMHC Anderson also noted that, despite writing down information to help him remember, Plaintiff continued to struggle with retaining information (Tr. 1580). She discussed several anger outbursts directed to his family members, his friends, and his principal along with rigid beliefs, inability to process the social aspect of a situation, and poor social awareness and motivation to start or plan daily activities without assistance or to follow through with both small and larger goals (Tr. 1580). LMHC Anderson opined that Plaintiff would need assistance with those issues and with medication management or would focus on what he wants to do instead (Tr. 1580).

LMHC Anderson indicated that Plaintiff did not appear to possess the skills or awareness to make the transition to adulthood without consistent help, even though he wanted to be independent (Tr. 1581).  Finally, LMHC Anderson observed that Plaintiff remained frustrated by the lack of independence like other men his age, including not being able to drive, have a car, and have a job, but appeared dependent on his mother and family to help him, which made him unhappy (Tr. 1581).

4.   *ALJ Discussion*

In the decision, the ALJ addressed the persuasiveness of the findings from Dr. Bee, Dr. Hodes, Dr. Knox, and LMHC Anderson as follows:

> The opinions of the state agency psychological consultants are persuasive.  These consultants opined that the claimant had moderate limitations in the B criteria.  These opinions are consistent with the medical evidence as a whole, particularly the course of treatment consisting of limited counseling and a good response to medication.  These opinions are also supported by the claimant's own reports of his abilities to perform daily functioning and his report that he graduated from high school with A and B grades.

> The opinions of Dr. Knox are not persuasive.  Dr. Knox opined that the claimant had moderate limitations in understanding and memory, moderate to severe limitations in concentration, and marked limitations in social interactions and adaptation.  Dr. Knox opined that the claimant met Listings 12.05, 12.06, 12.01 and 12.11.  These opinions are not support[ed] by Dr. Knox's examination findings, showing a pleasant affect, euthymic mood, logical thought process, intact memory and concentration, and noting the claimant was cleanly dressed in appropriate clothing.  Dr. Knox also assigned the claimant a GAF score of 55, indicating only moderate limitations on functioning, which is inconsistent with his concurrent findings of marked and severe limitations and impairments that met listings 12.05, 12.06, 12.10 and 12.11.  Dr. Knox's opinions are also inconsistent with the medical evidence as a whole, particularly the course of treatment consisting of limited counseling and a good response to medication.  These opinions are also supported by the claimant's own reports of his abilities to

perform daily functioning and his report that he graduated from high school with A and B grades.

The opinions of Yvonne Anderson are also unpersuasive. Ms. Anderson does not provide a specific residual functional capacity statement, but merely a recitation of information provided by the claimant's mother and her description of other consultant's findings.

(Tr. 19-20) (internal citations omitted). As Plaintiff contends, the ALJ did not properly consider the findings and opinions from the medical practitioners. For example, the medical practitioners indicated that Plaintiff would experience, at a minimum, moderate limitations in his ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself and that Plaintiff would have difficulty with and need gradual introduction to changes in the work environment (Tr. 56-60, 75-81, 1456-95). Notwithstanding, the ALJ indicated that Plaintiff would be able to deal with changes in a routine work setting (Tr. 15). Likewise, each of the medical practitioners noted several significant limitations regarding Plaintiff's socialization and ability to interact with peers, family, a principal, and others and indicated that he functioned best in isolation or with the assistance of his mother (Tr. 56-60, 75-81, 1456-95, 1580-81), yet the ALJ found Plaintiff was able to relate adequately to supervisors with occasional contact with coworkers and no contact with the public (Tr. 15).

The revised regulations for how the Commissioner will consider the medical evidence, and particularly the opinions of medical sources, admittedly allows the Commissioner to put the state agency reviewers on a different reliability footing than before. Instead, the Commissioner looks at a state agency reviewer as just another

piece of the medical puzzle to be considered.  Further, the treating provider is not due the automatic deference afforded under the old regulatory scheme.  Now, the key driver is supportability:

> Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1).

The ALJ ignored this standard in rejecting Dr. Knox's findings.  In short, the ALJ disregarded the battery of objective testing Knox provided to support his explanations for his opinions.  Neither state agency reviewer had this information available to them; neither cited to any objective testing that was contrary to Knox's findings; and no one contends Knox's testing is suspect.  The Plaintiff's treating source (LMHC Andersen) presented a statement that generally mirrored Knox's positions.  The ALJ rejected those too despite the regulatory requirement that the ALJ take into account the consistency of a source's opinion to the evidentiary record and the provider's relationship to the claimant (in other words, a treating provider is due some deference by virtue of plain commonsense – the more you have an opportunity to see behavior, the more you understand that behavior).  *See* 20 C.F.R. § 404.1520c(c)(3). That the ALJ failed to recognize all this is error.

### B.   *Subjective Complaints and Responsiveness to Medication*

Intertwined with the first issue is Plaintiff's argument that the ALJ failed to properly consider Plaintiff's subjective complaints and responsiveness to medication.

In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. § 404.1529. A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability, however. 42 U.S.C. § 423(d)(5)(A). To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. § 404.1529. Consideration of a claimant's symptoms thus involves a two-step process, wherein the Commissioner first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *3-9. If the Commissioner determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the Commissioner evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *3-9. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A

reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell*, 771 F.3d at 782; *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*).

In the decision, the ALJ considered Plaintiff's subjective complaints and concluded:

> The severity of the symptoms and the alleged effect on function is not supported by the total medical and nonmedical evidence, including statements by the claimant and others, observations regarding activities of daily living, and alternations of usual behavior or habits. The claimant testified that the lives with his family and gets along well with people. He testified that he is able to perform self-care, count change, care for his pet pig, shop at the store and occasionally cook. He testified that he spends time hunting, playing video games and socializing with friends. In a report to state agency representatives, the claimant reported that he was able to prepare simple meals, care for his pet pig and shop in stores. He reported that he attended church and spent time fishing with his friends. In June 2020, the claimant reported he had just graduated from high school with A and B grades. He reported that he was active in the Boy Scouts and spent up to ten hours a week on hobbies. He reported that the was cooperative with his teachers and had friends. In a report to state agency representatives, the claimant reported that he had to be reminded to bathe. The claimant's mother also testified to this at the hearing. However, a review of the medical evidence of record reflects that the claimant exhibited normal grooming and appearance during clinical presentations. Additionally, the claimant's teacher noted no problems with hygiene. Such a description of the claimant's daily activities and capacity for social functioning suggest a greater capacity tha[n] that alleged by the claimant during the hearing testimony and that would preclude all sustained work activity. These activities suggest a level of concentration inconsistent with a disabling level of pain.
>
> The medical evidence does not support the severity of the claimant's symptoms or limitations as alleged. Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature. The medical evidence of record reflects minimal objective findings of disabling limitations, and no history of surgery or injections for relief of any of the alleged conditions. Additionally, when the claimant is maintained on his

medication, his symptoms have improved significantly, according to both his subjective reports and the objective evidence documented during those times.

(Tr. 19) (internal citations omitted).  Plaintiff argues that the ALJ improperly evaluated her subjective complaints, including repeatedly focusing upon Plaintiff's ability to care for pets, his proper hygiene at appointments, his ability to prepare a meal and do laundry, his limited counseling and good response to medication, and his graduation from high school with A and B grades.   As Plaintiff contends, the ALJ mischaracterized the evidence regarding Plaintiff's subjective complaints and abilities.

For instance, Plaintiff explained that he fed a pet pig and was able to care for and feed the pet pig only with the assistance of his mom and dad (Tr. 35, 214).  As to his hygiene, Plaintiff stated that he needed to be told to take a bath and to change his underwear but also indicated during the hearing that he did not have a problem with getting cleaned up or getting dressed (Tr. 35, 214-15).   Regarding his medication management, Plaintiff expressed that he would not take his medication unless his mother provided it to him, and even though it was noted that Plaintiff did well if he stayed on his medication, which included Vyvanse, Prozac, Abilify, and Strattera, the record reflected that his medications were adjusted due to lack of improvement on several occasions and symptoms persisted despite use of medications (Tr. 215, 722-1019, 1293-1422).   Beyond giving him his medication, the record showed that Plaintiff's mother and, on occasion, his father consistently attended Plaintiff's appointments with him and acted as Plaintiff's historian (Tr. 722-1019, 1288-1422).

Plaintiff also noted that he spent approximately three to five minutes per day preparing sandwiches or noodles for meals and approximately 10 minutes per week taking his clothes to the laundry, where he would need assistance and someone showing him what to do (Tr. 35, 215).  He stated that he could not drive and needed help with paying his bills, handling a savings account, and using a checkbook or money orders and needed help with but could count change (Tr. 34-35, 216).  As far as his hobbies and interests, Plaintiff listed fishing, hunting on his parents' property, playing X Box and taking things apart as his main activities, noting that he did not go fishing often and experiences difficulty taking things apart (Tr. 34-38, 217, 1301).  A notation was made that he participated in Boy Scouts about five to 10 hours per week (Tr. 1301).  With respect to his grades, his report cards from 2017 through 2020 show that, while Plaintiff obtained some As and Bs, he also frequently obtained Cs, Ds, and Fs in his mathematics, science, and language arts classes (Tr. 34, 289).

In the typical case, the ALJ rejects the claimant's testimony about what he cannot do; the claimant says his pain prohibits him from doing tasks that relate to what would be required in the workplace, but the ALJ points to the evidentiary record and counters claimant's version is not credible.  Here, it is the opposite scenario.  The ALJ credited Plaintiff's testimony about what he says he can do when the evidentiary record says otherwise.  It bears reminding that the adjudicative process here is inquisitorial.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) ("[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against the granting of benefits") (alteration in original).  With that perspective in

mind, the overwhelming objective evidence is that Plaintiff needs reminders, cues, and assistance to deal with many of the necessities of life.  The common feature of his parent's testimony, of the medical opinions, of Plaintiff's psychological testing scores, and indeed consistent with the predominant features of Plaintiff's Asperger's Syndrome, is his questionable ability to stay on task, to focus, to adapt to or respond appropriately to changes in the work setting, and to interact with others not for the moment but for the workday.  Whether Plaintiff acted pleasantly on occasion, or was well-groomed during an examination, or attended a Boy Scout function is not substantial evidence to support a non-disability finding.  That Plaintiff had a parent or an adult in attendance with him to guide him for most tasks more often than not, or that a parent had to often remind him to change his underwear, is more telling about Plaintiff's ability to function in the workplace.  And while he may have performed at acceptable levels on some tests and was in the borderline range of global intellectual functioning, those facts alone do not amount to substantial evidence as to whether he can maintain and persist as these jobs demand considering other test results that reveal his adaptive abilities, focus, and socialization reflect significant deficiencies.  Any job, at its core, requires some minimal ability to adjust, focus, and socialize.

Neither does the fact that Plaintiff functions well enough in a sheltered atmosphere where his family and teachers could patiently satisfy his needs show that he can maintain concentration or appropriate social interactions throughout the workday, at least enough to satisfy the demands of the stated jobs in a work atmosphere.  In short, the ALJ cannot pick and choose the test results that favor the

finding unless the ALJ backs the selection with substantial evidence.  Nor can the ALJ look at the evidence without context.  Relevancy, as with any fact-finding effort, is still the measuring stick.  At best, the Plaintiff functions in a sheltered environment – one with coaching and patience and accommodation.  That is what the substantial evidence dictates, and the ALJ did not ask the VE if, assuming those requirements, such jobs exist in the national economy.  On remand, the Commissioner should consider Plaintiff's need for workplace accommodations and whether with those accommodations sufficient jobs exist in the national economy given Plaintiff's RFC.

IV.     *Conclusion*

For the foregoing reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.  Accordingly, after consideration, it is hereby

ORDERED:

1.     The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2.     The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 30th day of March, 2023.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


cc:    Counsel of Record